**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GARRY DAVIS,
Plaintiff-Appellant,

v.

D. L. FEATHERSTONE, Manager, Staff
Services Department, Baltimore Gas

and Electric Company;
Administrator of the Baltimore Gas
and Electric Company Long-Term
Disability Plan,
Defendant-Appellee.

No. 95-2056

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
John R. Hargrove, Senior District Judge.
(CA-95-452-HAR)

Argued: March 6, 1996

Decided: October 11, 1996

Before ERVIN and MOTZ, Circuit Judges, and BUTZNER, Senior
Circuit Judge.

_____

Vacated and remanded by published opinion. Senior Judge Butzner
wrote the opinion, in which Judge Ervin and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Richard Paul Neuworth, LAW OFFICES OF RICHARD
P. NEUWORTH, Baltimore, Maryland, for Appellant. Luther Ellis

Justis, Jr., Baltimore, Maryland, for Appellee. **ON BRIEF:** E. Fremont Magee, Lynn K. Edwards, E. FREEMONT MAGEE, P.A., Baltimore, Maryland, for Appellant.

_____

## OPINION

BUTZNER, Senior Circuit Judge:

Garry Davis, a former employee of Baltimore Gas and Electric (BGE) who was injured on the job, seeks penalties from BGE's disability plan administrator for not providing him with a plan document in violation of the Employment Retirement Income Security Act of 1974 (ERISA). In the first count of his complaint, Davis seeks a copy of BGE's disability plan. In the second count, he seeks the imposition of a penalty on the administrator for her failure to provide the disability plan pursuant to his written request. The district court held that Davis did not have a right to receive a copy of the document because he was not a participant in the plan. It also held that even if Davis were a participant, he has shown no loss. Consequently, the district court granted the administrator's motion to dismiss, which was filed under Federal Rule of Civil Procedure 12, and denied Davis's motion for summary judgment. Because we find that Davis was a plan participant, as that term is defined by ERISA, when he requested the plan documents, and that he suffered a loss, we vacate the judgment and remand for further proceedings.

The district court with the acquiescence of the parties considered matters outside the complaint. For this reason, we will treat the administrator's motion to dismiss as a motion for summary judgment. Fed. R. Civ. P. 12(c). The standard for reviewing this motion and Davis's motion for summary judgment is de novo . Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875, 877 (4th Cir. 1996). The standard for reviewing the district court's decision not to impose penalties and its denial of attorney fees is abuse of discretion. Glocker v. W.R. Grace and Co., 974 F.2d 540, 544 (4th Cir. 1992).

I

Garry Davis worked for BGE for approximately 12 years, from early 1981 to February 1993. On February 9, 1993, while Davis was

2

cutting wires at the top of a utility pole, the pole snapped, and he fell, suffering a concussion and other injuries. BGE discharged Davis nine days later for refusing to complete a fitness-for-duty examination. BGE considers a fitness-for-duty examination to be a work assignment, and refusal to comply subjects an employee to disciplinary action which may include discharge or some lesser sanction. Davis claimed that he could not complete this examination because of injuries resulting from the accident. In an affidavit filed in support of his motion for summary judgment, Davis explained that on February 16, 1993, two days before BGE terminated his employment, he gave a representative of BGE a small, bloody urine sample. The BGE representative asked for a larger sample, but Davis was unable to comply. The same day, Davis was treated by a urologist and subsequently underwent surgery for his urinary problem. On May 19, 1993, an orthopedist who examined Davis on behalf of BGE stated that Davis was not capable of returning to work. More than a year later, Davis's treating orthopedist stated that he remained unfit for duty.

In May 1994, Davis wrote a letter to BGE seeking information about salary continuation benefits. The company responded that he was not entitled to such benefits. Undeterred, Davis asked BGE to send all documents relating to the benefits. In June 1994, the company reiterated that he was not eligible for wage continuation benefits and attached a summary plan description of BGE's benefit plans. The summary plan, however, provides that if there is any inconsistency between the summary and the plan itself, the plan controls. In July 1994, Davis demanded compensation under three of the plans described in the summary plan document. BGE responded that he did not meet the requirements for these plans. In November 1994, Davis through an attorney requested a second copy of the summary plan description along with a copy of BGE's Long-Term Disability Plan. BGE replied that Davis did not meet the requirements of the plan, and it did not furnish the documents. The next month, Davis's attorney wrote requesting the long-term disability plan and offering to pay the cost of furnishing the documents. The company did not respond.

In February 1995, Davis filed suit against D.L. Featherstone, administrator of BGE's Long-Term Disability Plan, seeking an injunction to obtain the disability plan document and a penalty against the administrator for not disclosing the plan. In March 1995, after

3

Davis filed suit, BGE's attorney provided Davis with a copy of the Long-Term Disability Plan.

II

In Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 118 (1989), the Court observed that the purpose of the ERISA disclosure provisions is to ensure that "`the individual participant knows exactly where he stands with respect to the plan,' H.R. Rep. No. 93-533, p.11 (1973)." To implement this purpose, Congress provided that the administrator of a plan, "upon written request of any participant," shall "furnish a copy of the latest updated summary plan description, plan description . . . or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). An administrator who does not comply with such a request within 30 days of the request may, in the court's discretion, be liable for up to $100 per day from the date of such noncompliance. 29 U.S.C. § 1132(c)(1)(B) (Supp. 1996). Not every employee is a participant in a company's ERISA plan. Instead, the Act defines participant as "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . .." 29 U.S.C. § 1002(7).

In Firestone, the Court considered a court of appeals opinion that gave an expansive interpretation to ERISA's definition of a participant by allowing any employee "who claims to be a participant" to bring an action for failure to disclose plan documents. The Supreme Court criticized this interpretation because it did not adhere to the statute. 489 U.S. at 117. At the same time, the Court recognized that the statute is intended to ensure that potentially legitimate claimants can get the information they need to determine whether they are in fact entitled to benefits. To clarify the intended meaning of the Act's definition, the Court designated four categories of participants: (1) employees in currently-covered employment; (2) former employees reasonably expected to return to covered employment; (3) former employees with colorable claims that they will prevail in suits for benefits; and (4) former employees with colorable claims that they will fulfill eligibility requirements in the future. Firestone, 489 U.S. at 117-18 (citations omitted).

4

Davis clearly does not satisfy the requirements of the first or second categories. First, he is not currently employed with BGE. Second, the company asserts, without rebuttal by Davis, that his termination precludes his return to the company. If Davis is to be a participant under BGE's Long-Term Disability Plan, he must fall within the third or fourth category--a former employee with a colorable claim that he will prevail in a suit for benefits or a former employee with a colorable claim that he will fulfill eligibility requirements in the future.

III

To be eligible for benefits under BGE's disability plan, an employee must meet three requirements: (1) ten years of service as a "regularly scheduled employee" with the company; (2) exhaustion of benefits provided by the company pursuant to sick benefit plans, employee injuries plans, or other relevant plans; and (3) disability. Disability can be established in two ways: through qualification to receive social security disability insurance benefits or through certification of disability by a BGE official.

At the time he was injured, Davis was a regularly scheduled employee who could colorably claim that he satisfied the requirements of BGE's plan. Davis meets the first requirement of the BGE plan. He was a regularly scheduled employee for 12 years when he was injured, surpassing the threshold of 10 years. He also meets the second requirement. Because the company discharged him nine days after he was injured, he is no longer an employee entitled to benefits. Therefore, it would be futile for him to attempt to exhaust his benefits, as the company would not provide them. BGE confirms that Davis never can exhaust these benefits. See Appellee's Brief at 11. As a result, Davis can make the "clear and positive" showing of futility that acts as an exception to the typical requirements of exhaustion. See Glover v. St. Louis-San Francisco Railway Co. , 393 U.S. 324, 329-31 (1969).

Although there is no showing that the appropriate BGE medical official has found Davis to be disabled, his request for social security benefits is pending. Whether Davis is disabled within the meaning of the plan rests on how the Social Security Administration rules on his application. If he does not meet the standards of disability prescribed

5

by that Act, he will not meet the third requirement of BGE's plan, and he will not be eligible for benefits.

Davis's potential ineligibility for benefits does not mean, however, that he was not a participant in BGE's Long-Term Disability Plan at the time he requested a copy of the plan's documentation. ERISA's definition of participant includes former employees who "may become" eligible for benefits. 29 U.S.C. § 1002(7). The Supreme Court has interpreted this provision of the Act to mean that participant status is not limited only to those with meritorious claims but also extends to those with "colorable claims." Firestone, 489 U.S. at 117-18. "Whether an employee has standing as a `participant' depends, not on whether he is actually entitled to benefits, but on whether he has a colorable claim that he will prevail in a suit for benefits." Abraham v. Exxon Corp., 85 F.3d 1126, 1129 (5th Cir. 1996). In the present context, "the requirement of a colorable claim is not a stringent one." Panaras v. Liquid Carbonic Industries Corp., 74 F.3d 786, 790 (7th Cir. 1996). A claim is colorable if it is arguable and non-frivolous, whether or not it would succeed on the merits. See Kennedy v. Connecticut General Life Ins. Co., 924 F.2d 698, 700-01 (7th Cir. 1991).

Even if Davis's claim ultimately proves to be unsuccessful, it was colorable when he made his request for information. As we have seen, Davis met the first two requirements to be eligible for benefits under the plan. And, although a final determination had not been reached, it was apparent that he might satisfy the third eligibility requirement because he had suffered an injury on the job which had rendered him unfit for service. Because Davis had an arguable, nonfrivolous claim of eligibility for benefits when he made his request for information, he had a colorable claim. For that reason, he qualified as a plan participant and had a statutory right to receive the information he sought within 30 days of his request.

IV

The district court erroneously concluded that Davis was not a participant in BGE's plan. Although the standard for reviewing a district court's denial of a penalty is abuse of discretion, a "district court by

6

definition abuses its discretion when it makes an error of law." <u>Koon v. United States</u>, 116 S. Ct. 2035, 2047 (1996).

Because Davis was a participant entitled to the documents he requested, the district court must reassess its decision not to impose penalties on BGE. Two factors generally guide a district court's discretion: prejudice to the plaintiff and the nature of the administrator's conduct in responding to the participant's request for plan documents. Although prejudice is a pertinent factor for the district court to consider, it is not a prerequisite to imposing a penalty. <u>See Curry v. Contract Fabricators, Inc. Profit Sharing Plan</u>, 891 F.2d 842, 847 & n.10 (11th Cir. 1990) (prejudice); <u>Kleinhans v. Lisle Savings Profit Sharing Trust</u>, 810 F.2d 618, 622 (7th Cir. 1987) (conduct of administrator); <u>see also Kascewicz v. Citibank, N.A.</u>, 837 F. Supp. 1312, 1331-32 (S.D.N.Y. 1993) (collecting cases).

In this case, Davis contends that BGE's refusal to provide the requested plan documents prejudiced him. He points to the aggravation and frustration he faced as a result of the administrator's refusal and to the fact that he was forced to engage a lawyer and file suit simply to get a copy of the Long-Term Disability Plan.

In addition to the impact on Davis of the administrator's statutory violation, the district court should consider the conduct of the administrator. The purpose of the penalty provision is to provide plan administrators with an incentive to meet requests for information in a timely fashion. <u>See Porcellini v. Strassheim Printing Co.</u>, 578 F. Supp. 605, 614 (E.D. Pa. 1983). When there is some doubt about whether a claimant is entitled to the information requested, the Supreme Court has suggested that an administrator should err on the side of caution:

> Faced with the possibility of $100 a day in penalties under § 1132(c)(1)(B), a rational plan administrator or fiduciary would likely opt to provide a claimant with the information requested if there is any doubt as to whether the claimant is a `participant,' especially when the reasonable costs of producing the information can be recovered.

<u>Firestone</u>, 489 U.S. at 118. BGE's Long-Term Disability Plan is ten pages long. At the prescribed rate of $.25 a page, a copy of the plan

7

would have cost BGE $2.50, which it could recover. See 29 C.F.R. § 2520.104b-30(b) (1996).

V

In its alternative reason for denying a penalty the district court held that even if Davis were considered a participant, he had shown no loss.

Section 1132(c) makes no provision for compensatory damages, so it would have been useless for Davis to plead them. Instead, frustration, trouble, and expense are relevant factors for a district court to consider in deciding whether to impose a penalty. It is evident that Davis had to go to the trouble and expense of engaging an attorney to obtain the BGE plan. He did not need to prove monetary damages. Curry, 891 F.2d at 847 n.10.

VI

ERISA allows a court to impose a reasonable attorney's fee and costs upon either party. 29 U.S.C. § 1132(g)(1). Davis's request for an attorney's fee and costs is not moot, even though his request for the plan is moot. Davis had to engage a lawyer and file suit. Only then did BGE furnish the plan. Supplying Davis with the plan summary did not satisfy the requirements of § 1024(b)(4), especially since the summary stated that in the event of inconsistencies between the plan and the summary, the plan controlled. Because of the trouble and expense that Davis incurred to get the plan, he suffered a loss. See Curry, 891 F.2d at 847 n.10. On remand the district court should reconsider the imposition of an attorney's fee and costs. In deciding whether to award an attorney's fee, the district court should apply the test explained in Quesinberry v. Life Insurance Co. of North America, 987 F.2d 1017, 1029 (4th Cir. 1993).

VII

We vacate the judgment and remand for reconsideration in accordance with this opinion. Davis shall recover his costs on appeal.

VACATED AND REMANDED

8