**Anita G. HUSSEY, Plaintiff,**

v.

**E.I. DuPONT DE NEMOURS & CO. PENSION & BENEFIT PLAN, Defendant.**

Civil Action No. 6:96–0402.

United States District Court, S.D. West Virginia, Parkersburg Division.

May 23, 1997.

---

Robert A. Ellison, Albright, Bradley & Ellison, Parkersburg, WV, for plaintiff.

Charles L. Woody, Paula D. Gillis, Spilman, Thomas & Battle, Charleston, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are cross motions for summary judgment. The Court **GRANTS** Plaintiff's motion for summary judgment and **DENIES** Defendant's motion for summary judgment.

### BACKGROUND

The parties substantially agree on the operative facts. DuPont maintains a Pension and Benefit Plan (the Plan) for its employees. One of the benefits available to DuPont employees who have reached the age of fifty with at least twenty-five years of continuous service is a post-retirement joint and survivor annuity under which an employee may elect to have his pension reduced to provide annuity payments to his beneficiaries after his death. Under the Plan, a participant may select the annuity by making a written election at least thirty days prior to his retirement. The Plan states that annuity elections made less than thirty days before retirement will be effective only if approved by the Board of Benefits and Pensions (The Board).

Under the Plan, the Board has sole authority to administer it, as well as the discretionary authority to construe the terms and conditions of the Plan and to determine eligibility for benefits. The Plan also provides that all decisions of the Board concerning the interpretation and application of the Plan shall be final.

The Plaintiff is the widow of a DuPont retiree, Edward Hussey. She claims to be an annuitant. DuPont denied her claim, which she asserts should be payable to her at $1,256.00 per month. Mr. Hussey was employed as a chemist by DuPont from 1965 until the date of his death, January 11, 1995, which is also the date of his retirement. Mr. Hussey was born on September 3, 1938. Thus, he had over 25 years of continuous service with DuPont and was over age 50 at retirement.

Mr. Hussey was diagnosed with pancreatic cancer on May 17, 1993. He immediately underwent surgery, radiation treatment and chemotherapy, but in July 1994, the cancer recurred. Mr. Hussey reentered the hospital

on December 12, 1994 and died there on January 11, 1995.

On December 15, 1994, Dave Wallan, Mr. Hussey's supervisor at DuPont, contacted Gene Carpenter, a DuPont employee relations specialist, to inform him that Mr. Hussey was in the hospital in critical condition. Mr. Wallan also asked Mr. Carpenter whether Mr. Hussey had arranged to "maximize his survivor benefits." Def.'s Mem. Supp. Summ. J. Ex. C at 21. After investigating, Mr. Carpenter discovered Mr. Hussey had elected in 1990 not to receive his pension and retirement benefits in the form of a joint and survivor annuity.

Mr. Carpenter then advised Mr. Wallan that since Mr. Hussey was in such bad physical condition, Mr. Hussey should elect immediately the joint and survivor annuity payment option to maximize his wife's benefits. Mr. Carpenter also informed Mr. Wallan there was a thirty day waiting period before the election would take effect.

Mr. Carpenter then visited Mr. Hussey in the hospital to explain that electing the joint and survivor annuity option would increase the benefits paid to his survivor. He also explained to Mr. Hussey and Plaintiff that Mr. Hussey would have to survive at least thirty days from the date of the election for the annuity to take effect. Mr. Hussey signed the form to elect the annuity on December 15, 1994. The reverse side of the form states:

> The election, in order to be effective, must be made at least 30 days prior to the date of retirement. Elections within the thirty day period prior to retirement will be effective only if approved by the Board of Benefits and Pensions.

> Election of a joint and survivor option is not permissible within 30 days preceding retirement except following the death of a named beneficiary or as specified in the Plan. Therefore, this form should not be used in any such case unless specific approval is obtained from the Board of Benefits and Pensions.

Mrs. Hussey testified at her deposition that she had not read the form and was not informed by Mr. Carpenter the Board could entertain a waiver of the thirty day require-ment. Defendant agrees Mr. Carpenter did not mention the possibility of a waiver.

In an attempt to meet the thirty day requirement, Mr. Carpenter instructed Plaintiff to inform him of Mr. Hussey's retirement election only when Mr. Hussey's death was imminent. On January 11, 1995, three days before the expiration of the thirty day period, doctors advised Plaintiff that Mr. Hussey had a very short time to live. As instructed, Mrs. Hussey then notified Mr. Carpenter of her husband's immediate retirement. Mr. Hussey expired approximately three hours after his wife retired him from DuPont.

One or two days following Mr. Hussey's death, Mr. Wallan approached Mr. Carpenter about appealing to the Board for a waiver of the thirty day requirement. Mr. Carpenter prepared and submitted a waiver request seeking to have the Board grant Mrs. Hussey the joint and survivor annuity. Mrs. Hussey did not assist in the preparation of the waiver request. She testified at her deposition, however, that she approved the filing of the request on her behalf and that she did not possess additional information or documents related to the request. The Board denied the waiver request.

Mr. Wallan and Mr. Carpenter then filed an appeal on behalf of Mrs. Hussey citing an unpublished opinion issued by a federal magistrate judge, *Mecholsky v. E.I. DuPont de Nemours Pension & Retirement Plan*, (D.N.J.1994), in support of the appeal. The Board denied the appeal, responding it had never waived the thirty day requirement.

## STANDARD OF REVIEW

The standard of review of a decision made by administrators of an ERISA benefit plan generally is *de novo*. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80, (1989); *Richards v. United Mine Workers of America Health & Retirement Fund*, 895 F.2d 133, 135 (4th Cir.1990); *de Nobel v. Vitro Corp.* 885 F.2d 1180, 1186 (4th Cir.1989). Where the plan gives the administrators discretion to determine benefit eligibility or to construe plan terms, however, the standard of review is whether the administrators abused their

discretion. *Firestone*, 489 U.S. at 111, 109 S.Ct. at 954 ("Trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers. Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse of discretion. A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable." (citations and internal quotations omitted)).[1]

Our Court of Appeals refined the test for determining the standard of review to be applied by district courts reviewing an administrator's exercise of discretion:

> While *de novo* review is inappropriate when reviewing an administrator's exercise of discretion, it is proper in deciding the two questions of contractual interpretation and performance: (1) whether the plan confers discretion upon the administrator to make the decision at issue; and (2) whether the administrator's decision falls within the scope of discretion conferred.

*Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 89 (4th Cir.1996).

Here, DuPont granted the Board of Benefits and Pensions broad discretion to interpret the terms of the Plan. The Plan vests in the Board the sole authority for administration of the Plan and the discretionary authority to determine eligibility for benefits and to construe the terms and conditions of the Plan. Def.s' Mem. Supp. Summ. J. Ex. A at 4. Both prongs of the *Haley* test are satisfied: (1) the Plan confers discretion on the Board to make the decision at issue because it has the power to determine all issues concerning eligibility for benefits; and, (2) the Board's interpretation of the Plan falls within the scope of discretion con-

ferred because it is authorized to construe the terms and conditions of the Plan. The Court thus reviews the Board's decision to deny Plaintiff's benefits under an abuse of discretion standard.[2]

Under the abuse of discretion standard, if the Board's decision is supported by substantial evidence and is in accordance with the law, the decision must be sustained even if the Court believes that substantial evidence also supports a contrary result. *See Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 619, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966); *Hamrick v. Schweiker*, 679 F.2d 1078, 1082 (4th Cir.1982).

## DISCUSSION

In *Pritt v. United Mine Workers of America 1950 Benefit Plan & Trust*, 847 F.Supp. 427, 429 (S.D.W.Va.1994), this Court quoted at length from *Lockhart v. United Mine Workers of America 1974 Pension Trust*, 5 F.3d 74, 77 (4th Cir.1993) to explain that in determining whether administrators of an employee benefit plan abused their discretion a court:

> must give due consideration, for example, to whether administrators' interpretation is consistent with the goals of the plan; whether it might render some language in the plan meaningless or internally inconsistent; whether the challenged interpretation is at odds with the procedural and substantive requirements of ERISA itself; whether the provisions at issue have been applied consistently; and of course whether the fiduciaries' interpretation is contrary to the clear language of the plan.

*Lockhart* noted the "dispositive principle remains, however, that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace it

---

1. Plaintiff argues the Board's decision was arbitrary and capricious and not merely an abuse of discretion. The Court of Appeals has not determined "whether there is any significant difference between the 'arbitrary and capricious' standard and the 'abuse of discretion' standard in this circuit." *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 n. 2 (4th Cir.1995) (citations omitted). The *Bernstein* Court noted, however, that "[a]lthough the 'abuse of discretion' standard is perhaps broader and less deferential than the

'arbitrary and capricious' standard, 'arbitrary and capricious' definitely is encompassed by 'abuse of discretion.'" *Id.*

2. Plaintiff does not argue the Court should review the Board's decision *de novo*. In fact, her memoranda, like Defendant's memoranda, assume an abuse of discretion standard, also without addressing the issue in any detail.

with an interpretation of their own."[3] *Id.* Finally, no abuse is present if the decision " 'is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.' " *Brogan v. Holland,* 105 F.3d 158, 161 (4th Cir.1997) (quoted authority omitted).

■ The Board's denial of Mr. Hussey's application for the annuity was unreasonable under the *Lockhart* standard. First, the denial was not consistent with the goals of the Plan. The purpose of the Plan is to "provide for the retirement of employees and, under the conditions set forth [in the Plan], to provide an employee who is retired ... with pension rights that take into account the length of his service...." Def.'s Mem. Supp. Summ. J. Ex. A. at 4. The Board's refusal to provide a full review of Plaintiff's claim, to promulgate specific procedures for seeking the waiver, and failure to provide meaningful notice of the possibility of the waiver to Mr. and Mrs. Hussey is inconsistent with providing employees access to the pension rights they have earned.

The Board's determination also renders language in the Plan meaningless and internally inconsistent. The Plan requires an employee who intends to participate in the joint and survivor annuity to elect to do so at least thirty days before his retirement unless a waiver of the thirty day waiting period is approved by the Board. The language on the reverse of the annuity election form contemplates the death of a beneficiary as an occasion for the grant of a 30 day waiver.[4]

The Plan does not, however, establish a procedure for applying for the waiver. Neither does the Plan provide procedural guidelines for the Board to follow in considering an application for the waiver. Employees and their representatives cannot know with certainty how to apply for the waiver because there are no explicit procedures for requesting the waiver. Finally, there are no substantive standards or written criteria, either in the Plan or otherwise, on which the Board may base its determination of whether to grant the waiver.

Plaintiff alleges the Plan administrators breached their fiduciary duty by not giving her the opportunity to participate in the appeal of the Board's decision. Although Plaintiff approved the filing of the appeal on her behalf, she was not given the opportunity to participate directly in the process. Def.'s Mem. Supp. Summ. J. Ex. B at 24.

Plaintiff also argues that she and her husband should have been informed of the possibility of a waiver earlier in the process and that neither she nor the deceased were advised of the procedure by which they could secure the waiver. She points out the summary plan description, issued pursuant to 29 U.S.C. § 1022(a)(1), does not mention the availability of a waiver. Although the reverse of the form Mr. Hussey signed in the hospital electing the joint and survivor annuity indicated there would be no waiver of the thirty day requirement without the Board's approval, Mr. and Mrs. Hussey only saw the form for a very brief time in the hospital and Mr. Hussey signed the form *in extremis.* The only other written reference to the availability of a waiver is in the Plan document itself, not routinely provided to plan participants and which was not provided to the Husseys. Aside from information on the reverse of the form, the Husseys received no notice of the possibility of obtaining a waiver before Mr. Hussey's death.

Had the Husseys received adequate notice it was possible to request a waiver of the thirty day waiting period, they would have done so. Plaintiff argues and the Court agrees, that if the Board had undertaken a full and fair review of Mr. Hussey's waiver application while he was alive and able to participate in the process, it might have reached a different conclusion.

ERISA fiduciaries must discharge their duties "in the interests of the participants

---

**3.** Although neither party raised the issue in their submissions, the Court also considers the five additional factors enunciated in *Haley v. Paul Revere Life Ins. Co.,* 77 F.3d 84, 89 (4th Cir. 1996), to the extent they are relevant, in deciding whether the Board abused its discretion.

**4.** "Election of a joint and survivor option is not permissible within 30 days preceding retirement *except* following the death of a named beneficiary or as specified in the Plan." (emphasis supplied).

and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries" and in the interest of defraying reasonable expenses of administering a plan. 29 U.S.C. § 1104(a)(1)(A). Our Court of Appeals observed Congress intended ERISA to provide "plan administrators and participants the opportunity and freedom to resolve internal disputes without necessarily having to resort to the expense and delay of the Courts." *Weaver v. Phoenix Home Life Mutual Ins. Co.*, 990 F.2d 154, 157 (4th Cir.1993).

> Given this goal, Congress assured plan participants of procedural fairness, by mandating that plan administrators provide a "full and fair review" of claims and the specific reasons for claim denials. In the words of the Third Circuit, "full and fair review must be construed not only to allow a pension plan's trustees to operate claims procedures without the formalities or limitations of adversarial proceedings but also to protect a plan participant from arbitrary or unprincipled decision making."

*Id.* (citations omitted). This review "ensures the plan beneficiary that he or she receives procedural fairness under the plan and that the plan administrator's decisions are principled and deliberate." *Bernstein v. Capital-Care, Inc.*, 70 F.3d 783, 789 (4th Cir.1995).

In *Mecholsky v. DuPont*, Civil No. 92–2287, slip op. (D. N.J. June 8, 1994), the unpublished opinion submitted by Plaintiff, Magistrate Judge Rosen found the DuPont Board abused its discretion in a case very similar to this one. The Magistrate Judge found the Board acted arbitrarily and capriciously when it denied the participant's claim for joint and survivor annuity benefits. The Magistrate observed there was "no indication in the record that the Board considered the Plaintiff's waiver request on appeal...." *Id.* at 13. The Magistrate went on to hold the "Board's failure to consider the issues relevant to waiver of the thirty day period ... was arbitrary and capricious and an abuse of its discretion." *Id.* at 20.

Here, the evidence also demonstrates the Board did not undertake a full and fair review of the issues relevant to the possible waiver of the thirty day waiting period. The memorandum sent to Mr. Carpenter by Herbert J. Watson provides the only explanation before the Court of the Plan's decision to deny the joint and survivor annuity; it is very brief and does not indicate the waiver issue was considered:

> Your request regarding the J & S option for Mr. Hussey must be denied. As you know, our P & RP requires that a J & S option be elected at least thirty days, prior to retirement to be effective. Unfortunately, in Mr. Hussey's case, he was unable to meet this requirement prior to his death.
>
> DuPont's P & RP meets IRS guidelines which make it a tax qualified plan. This allows DuPont to maintain a "tax free" pension trust to provide retirement benefits for employees. In order to maintain this tax qualified status, we are required to administer the P & RP in accordance with its provisions. Therefore, we do not violate the provisions of our P & RP. With any violation of the provisions of our P & RP, we run the risk of losing our tax qualified status.... Needless to say, we're not going to allow this to happen.

Def.'s Mem. Supp. Summ. J. Ex. F.

This memorandum does not mention the waiver. It appears to have been written without reflecting an understanding that the Board had the authority under the Plan where death was a factor or the Plan otherwise specified to waive the thirty day waiting period and that the requested waiver would, therefore, be consistent with the Plan provisions. In other words, if Mr. Watson had considered the Plan provision as allowing the waiver of the thirty day waiting period, he would have apprehended that a waiver grant would have been consistent with the Plan language, and he would not have reached the inevitable conclusion that granting the waiver would violate the Plan provisions and jeopardize the tax-exempt status of the Plan.

In response to Mr. Carpenter's and Mr. Wallan's appeal of this decision, Mr. Watson forwarded them a similarly terse explanation of the Board's decision to deny the appeal:

> The Board of Benefits and Pensions ... considered the claim, on behalf of Mr. Hus-

sey's surviving spouse, for benefits under the ... P & RP. The Board reviewed all of the information submitted including the Mecholsky v. DuPont case.

The Board concluded that J & S benefits should not be paid in this case because all of the eligibility requirements were not met: specifically the thirty day waiting period.

... Thus, the 30–day requirement must be met and the Board has never waived this requirement in order to allow a J & S Option to be effective.

Def.'s Mem. Supp. Summ. J. Ex. H. Especially troubling is the assertion in the memorandum that "the Board has never waived [the thirty day waiting period]." *Id.* If the waiver has never been granted, then the language permitting the possibility of waiver violates the second *Lockhart* factor because the language is, in effect, meaningless.

There is no evidence the Board considered the factual circumstances unique to Mr. Hussey's case. Although consistency of application of plan provisions is one of the *Lockhart* factors that normally works in favor of administrators, the fact that the thirty day waiting period has never been waived demonstrates the Board acts arbitrarily in failing to exercise even the discretion given it by the Plan. There is nothing before the Court indicating the Board engaged in the principled reasoning process required by *Brogan, supra,* or that its decision was based on substantial evidence. Plaintiff was not, therefore protected from an "arbitrary or unprincipled" decision making process. *Weaver, supra,* 990 F.2d at 157.

For the foregoing reasons, the Court finds and concludes the Board acted arbitrarily and capriciously, that its decision was not based on substantial evidence and that the Board abused its discretion by refusing to award Plaintiff the joint and survivor annuity. Accordingly the Court finds and concludes that Plaintiff is entitled to the relief she seeks under 29 U.S.C. § 1132(a)(1)(B), **GRANTS** Plaintiff's motion for summary judgment and **DENIES** Defendant's motion

for summary judgment. The Court determines Mr. Hussey's retirement to be effective on January 11, 1995, the date of his demise. Defendant is **ORDERED** to pay Plaintiff the Joint and Survivor Annuity elected by Mr. Hussey effective on that date.

The monetary award is referred back to the Board of Benefits and Pensions of the DuPont Pension and Benefit Plan so that it may calculate the amount of the annuity payments due Plaintiff.

Also before the Court is Plaintiff's request for attorney's fees and costs. ERISA provides a "court in its discretion may allow a reasonable attorney's fee...." 29 U.S.C. § 1132(g). Our Court of Appeals has adopted a five factor test to guide a district court in its consideration of awarding attorney's fees under ERISA:

(1) degree of opposing parties' culpability or bad faith;

(2) ability of opposing parties to satisfy an award of attorney's fees;

(3) whether an award of attorney's fees against the opposing parties would deter other persons from acting under similar circumstances;

(4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question about ERISA itself; and

(5) the relative merits of the parties' positions.

*Quesinberry v. Life Ins. Co. of North America,* 987 F.2d 1017, 1029 (4th Cir.1993). Here, there is no evidence of bad faith on the part of DuPont nor is there indication that awarding fees would deter other persons from acting under similar circumstances. *Quesinberry* factors two, four and five, however, require further scrutiny. Accordingly, the Plaintiff may submit a motion for attorney's fees and a supporting memorandum addressing those factors by June 16, 1997.[5] Defendant will then have fourteen days to respond and Plaintiff will have seven days to reply.

---

**5.** Plaintiff also should submit a fee petition accompanied by affidavits addressing the issues of reasonableness and necessity.

ERISA does not specifically provide for pre-judgment interest, and absent a statutory mandate the award of pre-judgment interest is discretionary with the district court. *Id.* at 1030. The rate of pre-judgment interest for federal question cases is left to a district court's discretion. Because Plaintiff will be made whole only if she receives pre-judgment interest, the Court **ORDERS** Defendant to pay pre-judgment interest at the treasury rate from January 11, 1995 to date, and then at the lawful rate. *See* 28 U.S.C. § 1961.