Nancy S. **DEVINE**, Plaintiff,

v.

**AMERICAN BENEFIT CORPORATION,** et al., Defendants.

No. Civ.A. 2:97–1157.

United States District Court, S.D. West Virginia, Charleston Division.

Nov. 13, 1998.

Mark W. Kelley and Jon L. Brown, Payne, Loeb & Ray, Charleston, WV, for plaintiff.

Thomas V. Flaherty and Keith Kodosky, Flaherty, Sensabaugh & Bonasso, Charleston, WV, John J. Polak and Susan M. Murray, Rose & Atkinson, Charleston, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are (1) Defendant American Benefit Corporation's (ABC) motion for summary judgment; (2) a motion for summary judgment filed by Defendant Counter–Claimants Association of Community Mental Health/Mental Retardation Programs of West Virginia Benefit Plan Trust (the Trust) and its Trustees; and (3) Plaintiff Nancy S. Devine's counter motion for summary judgment against Defendants. The Court **GRANTS** Defendants' motions for summary judgment and **DENIES** Devine's motion.[1] This resolves the case.

## I. FACTUAL BACKGROUND

The Trust is an employee welfare benefit plan as defined in 29 U.S.C. section 1002(1). It provides health care benefits to covered employees and covered dependents of the participating employers in the Trust. The Trustees are designated by the Plan as its Administrator. They "have full and complete authority, responsibility, discretion and control over the Plan[,]" including the authority (1) to "contract with certain organizations relative to monthly billing, claims payment and actuarial consultation[;]" and (2) to "do such other acts reasonably required to administer the Plan." Ex. C, Def. ABC's motion for summ. jgt. at 3.

To fulfill their duties, the Trustees contracted with ABC for the latter to provide monthly billing, claims payment and actuarial consultation services to the Trust. In sum, as a Third Party Administrator, ABC "provid[es] all other necessary Claims Administration duties generally necessary to properly administer the Benefit Plan." Ex. D. Def. ABC's motion for summ. jgt. at 2.

The parties agree the 1994 version of the Plan is applicable here. The subrogation provision in the 1994 Plan provides, in part, as follows:

To the extent that benefits for covered services are provided or paid by the Plan, the Plan shall be subrogated and succeed to any and all rights of any Covered Employee or Covered Dependent for recovery of such paid expenses against any person, corporation, organization or other entity who may be liable for such expenses. Such Covered Employee or Covered Dependent shall be required by the Plan to provide information with respect to other persons, corporations, organization, or other entities which may be liable for expenses paid by the Plan. The Plan's right of subrogation granted herein shall constitute a lien against any settlement or the proceeds of any judgement by a Covered Employee or Covered Dependent against a responsible third party.

Should a Covered Employee or Covered Dependent institute negotiations or a civil action to recover damages from a third party who may be liable for expenses paid by the Plan, the Covered Employee or Covered Dependent is required to notify his or her legal counsel of the Plan's right of subrogation and subrogation lien.

Such Covered Employee or Covered Dependent may also be required to execute and deliver to the Plan a written confirmation and/or his or her legal counsel of the lien granted herein and certain other instruments that may be required to secure and protect the Plan's right of subrogation. Failure to provide such information or documents, or failure to cooperate with the Plan in protection of its right of subrogation, may result in cancellation of benefits and/or denial of the claim upon which the Plan's subrogation right is based, but such failure shall not affect the Plan's right of subrogation.

The Covered Employee or Covered Dependent and/or his or her legal counsel shall pay the Plan all amounts recovered

---

1. Also pending is Defendants' motion to strike Plaintiff's request for a jury trial. The Court

**DENIES** the motion without prejudice as moot.

by suit, settlement or otherwise from any third party to the extent of the benefits provided or paid under this Plan.

Ex. E., Def. ABC's motion for summ. jgt. at 6.

Under the heading "**GENERAL LIMITA-TIONS AND EXCLUSIONS[,]**" the Plan further provides:

No payment will be made under this Plan for expenses incurred in connection with:

. . . .

40. Any illness or injury or other condition for which any person, corporation, organization or other entity may be liable or legally responsible by reason of negligence, an intentional act or breach of any legal obligation on the part of such person, corporation, organization or other entity provided such person, corporation, organization or other entity makes restitution for expenses incurred.

*Id.* at 19–20.

Devine was a Plan participant at all relevant times. Her son, John Devine, was likewise a covered dependent. Devine was provided a copy of the Summary Plan Description at the outset of her employment. She also acknowledged receiving subsequent updates to the SPD.

In June 1994, John Devine was assaulted by a third-party adult and required medical care. Devine submitted John's medical bills to ABC for payment. ABC first learned of the attacker's involvement in an August 1994 letter from Devine. Following Devine's letter, ABC responded with a September 2, 1994 missive requesting her signature on a one-page subrogation agreement. Parenthetically, as is apparent from the subrogation provision, a writing is not required for the Plan to enforce its subrogation rights.

In an October 14, 1994 letter, Devine's attorney informed ABC Devine would not sign the agreement. Counsel stated "While we recognize that under the insurance contract that you may have a contractual right of subrogation, we find that the language in your requested agreement form to be overbroad and inappropriate. *Could you please send me a copy of the policy or plan.*" Ex. J, Def. ABC's motion for summ. jgt. (emphasis added).

On October 17, ABC sent to Devine a form letter virtually identical to that sent on September 2. On October 19 an ABC employee, Christa Martin, responded to counsel's request for information. Martin forwarded only the subrogation provision. She stated, however, "Should you have any further questions regarding this matter, please do not hesitate to contact this office." Ex. 2, Pl.'s reply.

On October 31, 1994 Devine's attorney again refused to provide his client's signature on the one-page subrogation agreement. Once again, counsel recognized the Plan's contractual right of subrogation but argued the agreement was overbroad, citing two cases in support based upon state common law. Counsel included a proposed substitute subrogation agreement with his letter. On November 30, 1994 ABC sent a third form request for Devine to sign the subrogation agreement.

■ Because of Devine's refusal to sign the subrogation agreement, ABC withheld payment of benefits to her. Subsequently, counsel for the Devines and counsel for the Trust, attorney R. Terrance Rodgers, had discussions in late 1994. Rodgers asserts it was agreed orally that if Devine protected the right of subrogation, ABC would be directed by the Trust to pay the withheld benefits. Devine denies any such agreement was reached and, for purposes of this motion, the Court accepts that, and any other disputed representation, as true.[2]

---

2. Devine asserts repeatedly in her brief the subrogation agreement proposed by ABC, and the Plan provision upon which it is based, are contrary to state and federal law. She argues (1) the Trust impermissibly sought an assignment of her claim against the attacker; and (2) she is entitled to a pro rata set-off from the reimbursement to reflect the Trust's proportionate share of reasonable litigation expenses. Devine's assertions are based on (1) a case from the Supreme Court of Appeals of West Virginia decided nearly three decades ago; and (2) a case from this district that did not involve ERISA. Devine's arguments fail.

First, the two cases relied upon by Devine are based upon state law and the propositions stated

Rodgers asserts he first learned in August 1997 the Devines settled their claim against John Devine's attacker. The parties did not have contact with each other at any time between December 1994 and August 1997. ABC confirmed for Rodgers that Devine paid over no monies to reimburse the Plan for its payments in her son's behalf.

In a September 5, 1997 letter, Devine's attorney sent Rodgers a letter saying Devine "may be willing to discuss the possibility of some settlement of the [subrogation] claim." Ex. O, Def. ABC's motion for summ. jgt. at 1. Counsel further stated as follows regarding its 1994 request for a copy of the Plan:

> ERISA provides for a civil penalty in an amount not to exceed $100.00 per day for every day the requested [Plan] information is not provided and the administrator remains in violation of the requirements of ERISA.... Please advise when your client will issue a check payable to Mrs. Devine and the law firm of PAYNE, LOEB and RAY for payment of the civil penalty, costs and fees.

*Id.* at 2. Neither Devine nor her attorney advised ABC, the Trust or Rodgers prior to August 1997 that the Plan excerpt sent by Martin to Devine's lawyer in October 1994 was deficient in any way.

When Rodgers brought this to the attention of Devine's counsel, the lawyer replied:

> A review of the documentation reveals that the requested information is clearly expressed and that your client failed or refused to comply. There simply is no question that the requested documentation was not provided as required by ERISA. On its face, it can not be questioned that under ERISA statutory requirements and interpretative case law, the excerpted page referred to in your September 11, 1997 letter does not even minimally comply with ERISA requirements. Your client's October 19, 1994 response confirms your client's failure to comply.

Ex. Q, Def. ABC's motion for summ. jgt. In a final missive dated October 28, 1997 Devine's lawyer told Rodgers "my clients are willing to forego filing an action based on ERISA if your client is likewise willing to forego its alleged subrogation claim." Ex. R, Def. ABC's motion for summ. jgt.

■  Devine instituted this action on November 28, 1997. Her amended complaint seeks (1) compensatory and punitive damages; (2) a declaration there is no right of subrogation; (3) recovery for Defendants' al-

---

in them are no doubt preempted. Although not discussed by the parties, our Court of Appeals has frowned on attempts by participants or beneficiaries utilizing narrow principles of state anti-subrogation law to deny an ERISA sponsored plan its customary right of reimbursement. *See McInnis v. Provident Life & Acc. Ins. Co.*, 21 F.3d 586 (4th Cir.1994); *Hampton Indus., Inc. v. Sparrow*, 981 F.2d 726 (4th Cir.1992) (holding a North Carolina anti-subrogation statute was preempted by ERISA because it interfered with the plan's subrogative rights); *Provident Life & Acc. Ins. Co. v. Waller*, 906 F.2d 985 (4th Cir. 1990) (holding the same with respect to a Virginia anti-subrogation statute). Second, assuming the *assignment* portion of the subrogation agreement was contrary to law, counsel should have recognized his obligation for *reimbursement* under the remainder of the agreement. Third, concerning the proposed pro rata set-off, a recent case from our Court of Appeals largely resolves the question.

In *United McGill Corp. v. Stinnett*, 154 F.3d 168 (4th Cir.1998), the Fourth Circuit condemned a district court's use of simple equity to permit a participant to offset her reimbursement to the plan by the costs of obtaining the third-party recovery. The plan language, very similar to the instant Plan provision, provided "Our

right of subrogation will be to the extent of any benefits paid or payable under this plan...." *Id.* at 170. The Court of Appeals held "Where, as here, the language of the Plan does not qualify the right to reimbursement by reference to the costs associated with recovery, we are bound to enforce the contractual provisions as drafted." *Id.* at 173. While the Court of Appeals left open the question of whether this rule applies where a beneficiary's recovery from the third party after deducting attorney's fees is actually less than the plan's reimbursement claim, the Court presumes that did not occur here. If it did, the Court will make any necessary modifications via a timely filed motion pursuant to *Rule* 59(e), *Federal Rules of Civil Procedure*.

As reaffirmed by *Stinnett*, the Trust's right of subrogation is controlled by the terms of the Plan. *See also Sargent v. Holland*, 114 F.3d 33, 37 (4th Cir.1997) (stating "this circuit has repeatedly rejected efforts to have oral statements override the written terms of ERISA benefit plans."); *Coleman v. Nationwide Life Ins.*, 969 F.2d 54, 58–59 (4th Cir.1992). The Trust's subrogation claim rests not on prelitigation fencing by counsel, but rather on the unambiguous terms of the Plan.

leged unlawful attempts to coerce Devine into signing the subrogation agreement; and (4) imposition of a civil penalty pursuant to 29 U.S.C. § 1132(g)(1) for the Trust's failure to provide her with a copy of the Plan as requested.[3] The Trust's and the Trustees' counterclaim seeks attorney fees and recovery of the amount of benefits paid, $9,654.00.[4]

## II. DISCUSSION

### A. The Summary Judgment Standard

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

> Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for ... discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist

that give rise to a genuine issue. As the *Anderson* Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]"

*Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* 513 U.S. 813, 814, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Service Corp.,* 962 F.Supp. 75, 77 (S.D.W.Va. 1997); *Spradling v. Blackburn,* 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir.1995).

### B. The Right of Subrogation

Resolution of the subrogation dispute centers around the subrogation provision and the exclusion relied upon by Devine. The relevant portions of the subrogation provision follow:

> To the extent that benefits for covered services are provided or paid by the Plan, the Plan *shall be subrogated and succeed* to any and all rights of any Covered Employee or Covered Dependent for recovery of such paid expenses against any person, corporation, organization or other entity who may be liable for such expenses.
>
> . . . .

---

3. In addition to what is contained in her complaint, Devine asserts putative claims for "fraud, agency, contract, assignment and subrogation." Pl.'s resp. to Def. ABC's motion for summ. jgt. at 8. While fraud and breach of contract are recognized claims for relief, there is, of course, no claim at law for "agency" or "assignment." Further, Devine does not disclose how she can maintain a subrogation claim when she has no discernible rights as a subrogee.

In any event, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). Devine's claims for fraud, which was not pled with particularity, and breach of contract would create conflicting employer obligations and variable standards of recovery that are the antithesis to the uniform regulatory scheme ERISA was designed to implement. The state law claims are thus preempted.

4. The Trust mistakenly used the figure $10,-079.50 in its counterclaim. It has corrected the error in its motion for summary judgment. The Court will permit a late amendment of the counterclaim to reflect the correct amount.

The Covered Employee or Covered Dependent and/or his or her legal counsel *shall pay the Plan all amounts recovered by suit, settlement or otherwise from any third party to the extent of the benefits provided or paid under this Plan.*

(Emphasis added). This provision is crystal clear; Devine can offer no internal textual defense to the subrogation provision's applicability. Perhaps recognizing the quandary, she refers the Court to the following Plan exclusion:

No payment will be made under this Plan for expenses incurred in connection with:

. . . .

40. Any illness or injury or other condition for which any person, corporation, organization or other entity may be liable or legally responsible by reason of negligence, an intentional act or breach of any legal obligation on the part of such person, corporation, organization or other entity provided such person, corporation, organization or other entity makes restitution for expenses incurred.

Devine argues that because John Devine's "injury" was at the hands of a "person . . . liable or legally responsible by reason of . . . an intentional act . . . on the part of such person . . ." the expenses paid by the Trust were not for "covered services" under the subrogation provision. She asserts the Trust is thus not entitled to reimbursement of the

benefits paid. The gist of Devine's argument is that since she "was not entitled to receive any benefits under the Plan" in the first place, Pl.'s resp. and counter motion at 6, she is likewise not obligated to now reimburse the Trust for such benefits according to the subrogation provision.

Traditional notions of unjust enrichment and unfair financial windfalls aside, the final clause of subparagraph 40 decimates the argument. The exclusion from coverage only has force where the offending third party "makes restitution for expenses incurred."[5] The provision is obviously designed to prevent two asset-draining evils. First, the provision prevents a participant from defeating the subrogation right by settling first with a third-party tortfeasor and then making a claim for benefits. Second, it prevents a participant's double recovery, *i.e.*, recovering benefits first, settling with the tortfeasor and pocketing the windfall. The "exclusion" is a simple means for helping a participant injured at the hands of a recalcitrant or judgment-proof tortfeasor.[6]

■ At the time Devine requested benefits from the Trust, there had been no restitution made by John Devine's attacker. Accordingly, the Trust would have been unjustified in relying on this exclusion to deny coverage. The subsequent compensation paid by the attacker, however, is subject to the clear and unambiguous subrogation provision.[7]

5. The dispositive impact of this final clause is readily apparent to any reasonable legal practitioner. Nonetheless, Devine's attorney neglected to quote the relevant portion to the Court in making his "covered services" argument. Devine's attorney exacerbates the omission by (1) basing virtually his entire response brief on the incomplete clause; and (2) suggesting Defendants acted fraudulently in not providing Devine a copy of the Plan in an effort to conceal the assertedly clear exclusion from coverage. *See* Pl.'s resp. and counter motion at 16. Counsel further suggested it was appropriate to levy sanctions against ABC for its "deliberate concealment of relevant and material information and continual false representations to" Devine. The record discloses the allegations are wholly unwarranted.

The omission and unjustified allegations of fraud could not have been anything but intentional and left the Court initially with a serious misapprehension on a critical issue prior to receipt of responsive briefing and a *de novo* review

of the record. A misrepresentation of this nature goes to the very heart of the fact-finding process. It is thus no small matter.

The Court has considered seriously levying sanctions on counsel for his actions. It will suffice at this juncture, however, to remind counsel of the duty of candor and truthfulness with the Court. W.Va.R.Prof. Conduct 3.3(a).

6. The Court notes the Trustees' interpretation and application of the subrogation provision in relation to Devine is apparently consistent with its longstanding interpretation and application to others. *Stinnett* observes the significance of this historical interpretation. *Stinnett,* 154 F.3d at 171.

7. Devine made additional arguments utilizing, *inter alia*, concepts of waiver, agency, laches and the statute of frauds. To the extent these common law concepts are not wholly preempted by ERISA, they clearly lack merit.

■ Accordingly, the Court **GRANTS** the Trust and the Trustees' motion for summary judgment and **DENIES** Devine's motion as to the subrogation dispute. The Court awards partial judgment to the Trust and Trustees on their counterclaim for $9,654.00, subject to any necessary set-off appropriate under *Stinnett*.[8]

### C. The Statutory Penalty

Devine next seeks a statutory penalty pursuant to 29 U.S.C. section 1132(c) because ABC and attorney Rodgers did not promptly and properly respond to her lawyer's requests for "a copy of the policy or plan" or "information regarding the plan."

Section 1132(c) provides as follows:

(c) Administrator's refusal to supply requested information; penalty for failure to provide annual report in complete form

(1) Any administrator

. . . .

(B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. . . .

*Id.*

In *Sedlack v. Braswell Services Group, Inc.*, 134 F.3d 219 (4th Cir.1998), our Court of Appeals observed as follows:

Two factors guide a district court's discretion in determining whether to impose penalties under section 1132: prejudice to the plaintiff and the administrator's conduct in responding to the request for information. *See id.* at 738. Although prejudice is a "pertinent" factor, "it is not a prerequisite to imposing a penalty."

*Id.* at 226 (quoted authority omitted); *see also Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 659 (4th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 738, 136 L.Ed.2d 677 (1997); *Davis v. Featherstone*, 97 F.3d 734, 738 (4th Cir.1996) (stating further "frustration, trouble, and expense are relevant factors for a district court to consider in deciding whether to impose a penalty"). In *Davis*, the Court of Appeals observed "The purpose of the penalty provision is to provide plan administrators with an incentive to meet requests for information in a timely fashion." *Davis*, 97 F.3d. at 738.

■ Devine demonstrates no prejudice resulting from not obtaining a copy of the Plan when requested. Indeed, following her initial inquiry in 1994, she did not pursue the information further until 1997.[9]

Looking to the Defendant's conduct in responding to the request for information, there is little fault to be attributed. For instance, regarding the 1994 request, Devine's lawyer inserted a one-sentence request for the Plan in the same paragraph as his considered reasons for not executing the subrogation agreement proposed by ABC. It was thus entirely reasonable for Ms. Martin to excise and send the comparatively brief subrogation provision from the lengthy twenty-three page Plan. The critical consideration, however, is that Martin *put herself at counsel's disposal*, telling him if he had "any further questions regarding this matter, please do not hesitate to contact this office."

---

**8.** ERISA does not specifically provide for prejudgment interest, and, absent a statutory mandate, the award of prejudgment interest is discretionary with the district court. The rate of prejudgment interest for federal question cases is left to a district court's discretion. Because the Trust will be made whole only if it receives prejudgment interest, the Court **ORDERS** Devine to pay prejudgment interest at the treasury rate from October 28, 1997 to date, and then at the lawful rate. *See* 28 U.S.C. § 1961.

**9.** The Court does not suggest that Devine was obligated to make more than one request for the Plan. She was not. Her failure to pursue the matter, however, is relevant to the prejudice inquiry.

■ Under these circumstances, a statutory penalty is clearly not warranted. There is no basis in the record to conclude Devine suffered either frustration, trouble or expense at the hands of recalcitrant Plan officials. The Court thus **DENIES** Devine's motion for summary judgment concerning her entitlement to a section 1132(c) penalty and **GRANTS** the Trust and Trustees' motion in opposition to the penalty.[10]

### D. Attorney Fees

■ Defendants have requested attorney fees be imposed against Devine pursuant to section 1132(g)(1).[11] The inquiry is governed by the five factors discussed in *Quesinberry v. Life Insurance Co. of North America*, 987 F.2d 1017 (4th Cir.1993) (en banc). *See Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 422 (4th Cir.1993) (stating "a party who prevails [in an ERISA action] does not, by prevailing alone, establish a presumption of entitlement to an award of fees.") The five factors are:

1. The degree of the opposing party's culpability or bad faith;

2. The ability of the opposing party to satisfy an award of attorney fees;

3. Whether an award of attorney fees against the opposing party would deter other persons acting under similar circumstances;

4. Whether the party requesting attorney fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

5. The relative merits of the parties' positions.

*Id.* at 1029; *Sedlack*, 134 F.3d at 227; *Denzler v. Questech, Inc.*, 80 F.3d 97, 104 (4th Cir.1996); *Wheeler v. Dynamic Engineering, Inc.*, 62 F.3d 634, 641 (4th Cir.1995); *Hussey v. E.I. DuPont De Nemours & Co. Pension & Ben. Plan*, 963 F.Supp. 576, 582 (S.D.W.Va.1997).

■ As stated in *Custer,* "The factors simply constitute the nucleus of an inquiry which seeks to identify that unusual case in which the judge may shift fees to further the policies of the statute." *Custer,* 12 F.3d at 422. The test is not a rigid one, but rather a general set of guidelines for the district court to utilize in measuring the propriety of a fee award. *Id. Quesinberry* further stated some of the factors " 'may not be apropos in a given case' " and that " '[i]n particular types of cases, or in any individual case, . . . *other considerations may be relevant as well.*' " *Id.* (emphasis added) (quoting *Iron Workers Local # 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980)).

---

10. There is an alternative basis for ruling against Devine on her section 1132(c) claim. Defendants assert they cannot be held liable under section 1132(c) because, in contravention of section 1132(c), no "request for any information" was ever made by Devine to the Plan "administrator," which the Plan designates as the Trustees. Were this argument accepted, ABC would be subject to dismissal as an improper party, as it has no stake in the subrogation battle and the state claims and theories against it are preempted.

Defendants argue Devine made her requests not to the Trustees as the designated Plan Administrator, but only to ABC, the Third Party Administrator, and an attorney retained by the Trust. While Defendants cite a wealth of authority to support their position, they, and inexplicably Devine, fail to disclose there is a split amongst the federal circuits on the issue. *See Hunt v. Hawthorne Associates, Inc.*, 119 F.3d 888, 914–15 (11th Cir.1997) (noting circuit split on whether a "de facto administrator" might be held liable under § 1132(c)).

While not answering the precise question presented, *Coleman v. Nationwide Life Ins. Co.*, 969

F.2d 54, 62 (4th Cir.1992) suggests strongly our Court of Appeals would require an explicit request for information to the designated plan administrator rather than engaging in a *de facto* administrator inquiry that (1) is inappropriately fact-bound; (2) is contrary to the plain language of the statute; and (3) has its foundation in simple judicial inventiveness.

Accordingly, the Court relies upon the fork of authority most closely analogous to *Coleman* as an alternative basis for its finding of no liability against the Trust and the Trustees under section 1132(c). On the same basis, the Court **GRANTS** ABC's motion for summary judgment as it is not a proper party. ABC is **DISMISSED** with prejudice. Consequently, the Court need not reach ABC's laches argument.

11. Section 1132(g)(1) provides "(1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." *Id.* Devine does not dispute that Defendants all fall within the definition of "fiduciary." 29 U.S.C. § 1002(21).

Regarding the first factor, Devine devoted nearly sixty pages of briefing to the instant motions. Her filings are sprinkled liberally with allegations of fraud and intentional misdeeds by Defendants, which have absolutely no basis in the record. The impropriety of these unjustified allegations are highlighted, ironically, by the fact that it was *Devine's attorney* who omitted critical language from a Plan provision at the heart of this dispute, which initially misled the Court. This factor weighs strongly in favor of a fee award.

The second factor concerns the Court greatly. According to her lawyer's argument asserting entitlement to fees from the Defendants, Devine is "a simple working woman . . . [who] has no ability to satisfy any award of attorneys fees." Pl.'s resp. at 16. The Court accepts that representation. Nonetheless, the Court cannot turn a blind eye to the significant and needless expense occasioned to the Trust, and consequently its participants and beneficiaries, in defending this case. The Court further cannot ignore the apparent lack of any basis for suing ABC in the first place.[12] Nonetheless, the Court will treat this factor as neutral.

The third factor focuses on whether an award of attorney fees against the opposing party would deter other persons acting under similar circumstances. The Court believes an award under these circumstances would serve a significant deterrent effect. This factor thus weighs strongly in Defendants' favor.

The fourth factor asks whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself. The central purpose of this litigation from the Trust's and the Trustees' perspective was to recover monies that belonged in the Trust corpus for the benefit of all participants and beneficiaries. Accordingly, this factor weighs strongly in Defendants' favor.

The final factor examines the relative merits of the parties' positions. One need only review this Memorandum Opinion and the parties' briefing to readily discern the overwhelming merit of Defendants' arguments in support of dismissal. Accordingly, this factor weighs in favor of a fee award.

Based on the balancing of factors set forth above, and other considerations, the Court **GRANTS** Defendants' motions for summary judgment requesting an award of attorney fees and **DENIES** the corresponding portion of Plaintiff's motion as moot.[13] Defendants may file appropriate fee petitions pursuant to 29 U.S.C. section 1132(g)(1) and *Rule 54(d)(2), Federal Rules of Civil Procedure.*[14]

## III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motions for summary judgment and **DENIES** Devine's motion. Summary judgment on any ground not specifically discussed is **DENIED** as moot.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

12. ABC requested Devine dismiss it with prejudice from the case when it served a courtesy copy of its motion for summary judgment on Plaintiff's counsel in advance of filing it with the Court. Devine agreed to dismissal, but, inexplicably, only a dismissal without prejudice. ABC was understandably unwilling to put this litigation to an uncertain end and was consequently forced to participate in the instant briefing.

13. The Court notes that even apart from the section 1132(g) analysis, the subrogation provision authorizes the Plan's recovery of fees where it is "required to file or initiate a civil action to enforce its right of subrogation." Ex. E, Def. ABC's motion for summ. jgt.

14. Defendants' fee petitions should, at a minimum, (1) provide dates work was performed, (2) a reasonable description of the work, (3) time expended on the work, and (4) an affidavit or affidavits showing the requested hourly rate is reasonable. Further, pursuant to *Rule 54(d)(2)(B), Federal Rules of Civil Procedure,* the petition "shall also disclose the terms of any agreement with respect to fees to be paid for the services for which claim is made." *Id.* In preparing the petition, counsel is encouraged to refer to this Court's decision in *Continental Casualty Co. v. Assicurazioni Generali, S.P.A.,* 903 F.Supp. 990 (S.D.W.Va.1995) and other relevant precedent from the Court of Appeals.