Filed: April 19, 2001

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

———————————

No. 00-1907
(CA-00-503-S)

———————————

Steamship Trade Association, etc.,

                                                                    Plaintiff,

          versus

Pamela Bowman,

                                        Defendant - Appellant,

          versus

Carolyn Boehmer,

                                        Defendant - Appellee.

———————————

O R D E R

———————————

The court amends its opinion filed April 16, 2001, as follows:

On page 2, second full paragraph of text, line 10 -- "Pamela Bowman" is corrected to read "Diana Bowman."

                                        For the Court - By Direction

                                        /s/ Patricia S. Connor
                                                Clerk

PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

STEAMSHIP TRADE ASSOCIATION
INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION, (AFL-CIO) BENEFITS
TRUST FUND, (AFL-CIO) BENEFITS
TRUST FUND, by its Trustee, Horace
T. Alston,
Plaintiff,

v.                                                            No. 00-1907

PAMELA BOWMAN,
Defendant-Appellant,

v.

CAROLYN BOEHMER,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-00-503-S)

Argued: March 2, 2001

Decided: April 16, 2001

Before WIDENER and LUTTIG, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Luttig wrote the opinion, in
which Judge Widener and Senior Judge Hamilton joined.

_____

**COUNSEL**

**ARGUED:** Michael Carl Eisenstein, Baltimore, Maryland, for Appellant. Robert Garnett Blue, BLUE & EDWARDS, P.A., Towson, Maryland, for Appellee.

_____

**OPINION**

LUTTIG, Circuit Judge:

Appellant Pamela Bowman appeals the district court's grant of summary judgment to appellee Carolyn Boehmer in this interpleader action brought to determine the beneficiary of insurance proceeds paid upon the death of Dean Bowman, a participant in an employee benefit plan governed by the Employee Retirement Income Security Act ("ERISA") of 1974, 29 U.S.C. § 1001 et seq. For the reasons set forth below, we affirm.

I.

Dean Bowman, who died on October 5, 1999, was a longshoreman covered by the Steamship Trade Association - International Longshoremen's Association Benefit Plan for Active Employees (the "Active Plan"), an employee benefit program governed by ERISA. His participation in the Active Plan entitled him to a $50,000 life insurance policy through a group contract between the Benefits Fund that administers the Plan and the United States Life Insurance Company. On January 20, 1987, Dean completed an "Application for Group Insurance for Active Worker," in which he designated his then-wife, Diana Bowman, as the beneficiary of the life insurance policy. Subsequently, following his divorce, he contacted the Administrative Office of the Benefits Fund and filed a "Request for Change of Beneficiary" in which he named his mother, appellee Carolyn Boehmer, the sole beneficiary of the life insurance policy. J.A. 12 (change of beneficiary form dated April 23, 1993).

Dean never filed another "Request for Change of Beneficiary" form for the life insurance policy under the Active Plan. On May 6, 1998,

2

however, after he became disabled, he applied for a disability retirement pension and a death benefit pursuant to the Steamship Trade Association - International Longshoremen's Association Benefits Plan for Pensioners (the "Pension Plan"). The "Application for Death Benefits for Pensioner" completed by Dean stated that "the death benefit under the STA-ILA Benefits Fund shall be payable to" Pamela Bowman, his second wife since December 1995. J.A. 18.

Dean began receiving disability benefits under the Pension Plan on July 1, 1998. However, he remained covered by the Active Plan for health and life insurance through December 31, 1999. At the time of his death in October 1999, he had not yet become eligible for the death benefit under the Pension Plan, to which he named Pamela as beneficiary. Nevertheless, Pamela claims that the "Application for Death Benefits for Pensioner" also changed the beneficiary of the life insurance policy under the Active Plan, and that she is therefore entitled to the $50,000 proceeds of the policy paid by the United States Life Insurance Company to the Benefits Fund. Faced with conflicting claims to the life insurance proceeds, the Benefits Fund filed this interpleader action to determine the beneficiary of the money. The district court granted summary judgment to Carolyn, and Pamela appeals.

II.

The award of benefits under an ERISA plan is determined "in the first instance by the language of the plan itself." Lockhart v. United Mine Workers of America 1974 Pension Trust, 5 F.3d 74, 77 (4th Cir. 1993); see also 29 U.S.C. § 1104(a)(1)(D) (providing that an ERISA fiduciary "shall discharge his duties with respect to a plan . . . in accordance with the documents and instruments governing the plan . . . ."). Because the documents governing the Active and Pension Plans unambiguously entitle Carolyn to the life insurance proceeds, we affirm the district court's grant of summary judgment.

A.

Pamela's principal argument is that the "Application for Death Benefits for Pensioner" named her the beneficiary of the life insurance payment that is the subject of this interpleader action. We dis-

3

agree, for that application only named her the beneficiary of the death benefit under the Pension Plan, which is separate from the life insurance benefit of the Active Plan.

The Active Plan and the Pension Plan provide different benefits payable upon the death of a participant, with independent procedures for designating beneficiaries. The exclusive benefit payable upon the death of a participant in the Active Plan is a "life insurance benefit" funded through a policy purchased by the Benefits Fund for the participant:

> Payment of Life Insurance Benefit -- The Plan has contracted with an insurance company to pay the Life Insurance Benefit in the amount shown in the Benefit schedule to your beneficiary if you die from any cause while covered by the Plan. . . .

J.A. 248. The Active Plan also specifies a procedure for naming and changing beneficiaries of the life insurance policy:

> Designation of Beneficiary -- When you enroll as a participant, you will be asked to name a beneficiary. You may . . . change your designation at any time by filing a form with the Administrative Office. These forms are available from the Administrative Office.

J.A. 248.

The Pension Plan, in contrast, nowhere mentions a life insurance policy. Instead, it provides a death benefit paid directly by the Benefits Fund for participants covered by the Pension Plan at the time of death:

> Payment of Death Benefit -- The Plan will pay the Death Benefit in the amount shown in the Benefit Schedule . . . to your beneficiary if you die from any cause while covered by the Plan.

J.A. 64. Furthermore, the procedure for naming a beneficiary of the death benefit under the Pension Plan is separate from the process of

4

designating or changing a beneficiary of the life insurance policy of the Active Plan. J.A. 64 ("When you enroll as a Pensioner, you will be asked to name a beneficiary."); J.A. 297 (affidavit of an official of the Benefits Fund explaining that an application for death benefits under the Pension Plan is independent of a change of beneficiary under the life insurance policy of the Active Plan).

Thus, the application in which Dean designated Pamela as the beneficiary of his death benefit under the Pension Plan did not change the beneficiary of the <u>life insurance</u> policy under the Active Plan, nor did it purport to do so by its terms.* J.A. 18 ("It is understood and agreed that, unless I make a written request otherwise, the <u>death benefit</u> under the STA-ILA Benefits Fund shall be payable to Pamela Bowman.") (emphasis added). Rather, that application only entitled Pamela to the death benefit, if any, payable under the Pension Plan. The beneficiary of the life insurance benefit under the Active Plan remains Carolyn, pursuant to the most recently filed "Request for Change of Beneficiary Form." J.A. 12 (form changing beneficiary of life insurance policy to Carolyn Boehmer, dated April 23, 1993).

_____

* Likewise, we also reject Pamela's argument that Dean "substantially complied" with the requirements for changing a life insurance beneficiary when he completed the application for death benefits under the Pension Plan. <u>See Phoenix Mut. Life. Ins. Co.</u> v. <u>Adams</u>, 30 F.3d 554, 564 (4th Cir. 1994) (explaining that "an insured substantially complies with the change of beneficiary provisions of an ERISA life insurance policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy."). This case is unlike <u>Phoenix Mutual</u>, in which we found substantial compliance where the deceased submitted an incomplete change of beneficiary form and subsequently asked a representative of the pension plan to complete the form properly by telephone. Unlike the insured in <u>Phoenix Mutual</u>, Dean did not contact the Administrative Office of the Benefits Trust to request a change in the beneficiary of the life insurance policy, as required by the terms of the Active Plan, nor did he attempt to complete the correct paperwork, a change of beneficiary form that is created and processed by the insurer. J.A. 39-40.

5

B.

Faced with the plain language of the beneficiary designation forms, Pamela attempts to divert our attention to Dean's status as a pensioner at the time of his death. In her view, because Dean was receiving disability benefits when he died, he must have been covered exclusively by the Pension Plan, and she is entitled (as the sole beneficiary of benefits under that Plan) to all money paid by the Benefits Fund upon his death. However, Dean's receipt of disability benefits under the Pension Plan has no bearing on this case, for it is clear that under the documents governing both Plans, he remained eligible for life insurance benefits under the Active Plan -- and did not become eligible for death benefits under the Pension Plan -- even after he began collecting a pensioner's disability benefit.

The summary plan description for the Pension Plan explains that "when you become a Pensioner, the coverage you have as an active employee continues until the end of the Calendar Year in which your pension is effective" and "in some instances this coverage may continue for an additional year." J.A. 58. Likewise, the provision of the summary plan description for the Active Plan addressing the termination of benefits provides:

> Your coverage under the [Active] Plan automatically terminates on the earliest of the following dates:
>
> . . .
>
> the date you become entitled to a pension from the STA-ILA Pension Plan. Your benefit coverage will be continued until the end of the Calendar Year in which you are pensioned. Coverage may be continued for an additional year if you are credited with a sufficient number of hours when you are pensioned. . . .

J.A. 238. Thus, the Active Plan expressly contemplates that a participant may be "entitled to a pension from the STA-ILA Pension Plan" and still receive "benefit coverage [under the Active Plan] . . . until the end of the Calendar Year in which [he was] pensioned," and "for

6

an additional year . . . if credited with a sufficient number of hours when . . . pensioned." J.A. 238.

It is undisputed that Dean began receiving disability benefits under the Pension Plan in July 1998; that he was credited with sufficient hours to receive health and life insurance under the Active Plan through December 31, 1999; and that his death benefit under the Pension Plan would not have become available until January 1, 2000. J.A. 38-39 (affidavit of the co-administrator of the Benefits Fund). Therefore, at the time of his death in October 1999, Dean was eligible only for the life insurance policy under the Active Plan. The award of benefits pursuant to that policy is determined by the documents and instruments governing the Active Plan, which unambiguously name Carolyn as the beneficiary. Accordingly, we hold that the district court did not err in granting summary judgment.

CONCLUSION

For the reasons stated herein, the judgment of the district court is affirmed.

AFFIRMED

7