Natalie G. CARPENTER, Plaintiff,

v.

CARROLL, PINTO, INC., George Carroll, M.D., Carlos Pinto, M.D., Carroll, Pinto, Inc. Employees Pension Trust, and Carroll, Pinto, Inc. Employees Profit Sharing Plan, Defendants.

Carroll, Pinto, Inc., Carroll, Pinto, Inc. Employees Pension Trust, and Carroll, Pinto, Inc. Employees Profit Sharing Plan, Cross Claimant,

v.

George Carroll, Carlos Pinto, Cross Defendant.

George Carroll, Cross Claimant,

v.

Carlos Pinto, Cross Defendant.

No. 2:04CV758.

United States District Court, E.D. Virginia, Norfolk Division.

June 24, 2005.

Richard Kent Bennett, Esquire, Joseph Robinson, Esquire, Harman Claytor Corrigan & Wellman, Glen Allen, Stanley Paul Wellman, Esquire, Harman Claytor Corrigan & Wellman, Richmond, VA, for Plaintiff.

John Y. Pearson, Jr., Esquire, John Stephen Wilson, Esquire, Michael Charles Laurence, Esquire, Willcox & Savage, PC, Norfolk, VA, for Carroll, Pinto, Inc.; Carroll, Pinto, Inc. Employees Pension Trust; Carroll Pinto, Inc. Employees Profit Sharing Plan.

William Richard Savage, III, Esquire, Glasscock, Gardy and Savage, Suffolk, VA, for George Carroll, M.D.

Robert William McFarland, Esquire, Amy Morrissey Turk, Esquire, McGuire-Woods LLP, Norfolk, VA, for Carlos Pinto, M.D.

### OPINION and FINAL ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on defendants Carroll, Pinto, Inc. ("Carroll Pinto"), George Carroll ("Dr.Carroll"), Carlos Pinto ("Dr.Pinto"), Carroll, Pinto, Inc. Employees Pension Trust ("Pension Trust"), and Carroll, Pinto, Inc. Employees Profit Sharing Plan's ("Profit Sharing Plan") motions for summary judgment and plaintiff Natalie Carpenter's[1] ("Carpenter") cross-motion for summary judgment.

### I. FACTUAL and PROCEDURAL HISTORY

Plaintiff was married to Dr. Pinto on December 29, 1956. (Divorce Decree; Defs.' Ex. 1, pg. 1). Plaintiff and Dr. Pinto had one child, Colleen Marie Pinto. On December 24, 1974, plaintiff and Dr. Pinto separated. (Divorce Decree; Defs.' Ex. 1, pg. 1). They entered into a property settlement agreement ("settlement agreement") on February 3, 1977. As part of the settlement agreement, Dr. Pinto agreed to make Carpenter "the primary beneficiary of the sum of ONE HUNDRED THOUSAND DOLLARS ($100,-000.00) in the benefits he has under the Carroll, Pinto, Inc. Employees' Pension Trust and the Carroll, Pinto, Inc. Employees' Profit Sharing Plan." (Defs.' Ex. 1). The settlement agreement designated the daughter, Colleen Pinto, as the beneficiary of $100,000 in benefits, if Carpenter was

---

**1.** In some exhibits, plaintiff is listed as Natalie G. Pinto, her name while she was married to Dr. Pinto. For consistency, the court will refer to plaintiff as "Carpenter."

deceased at the time the benefits were payable. The Circuit Court of the City of Suffolk, Virginia, entered a divorce decree for Carpenter and Dr. Pinto on March 1, 1977. The settlement agreement was made part of the divorce decree. Dr. Pinto married his current wife, Gloria Pinto, on October 12, 1978.

The Profit Sharing Plan was created by Carroll Pinto on February 8, 1971. Dr. Pinto was a participant of the Profit Sharing Plan from its beginning. On February 3, 1977, Dr. Pinto executed an Irrevocable Designation of Beneficiary for Participant in the Carroll, Pinto, Inc. Employees' Pension Trust and the Carroll, Pinto, Inc. Employees' Profit Sharing Plan ("Irrevocable Designation"). The Irrevocable Designation named Carpenter as primary beneficiary and Colleen Pinto as secondary beneficiary in $100,000 of the investment fund and life insurance proceeds of the Pension Trust and Profit Sharing Plan. In the same document, the trustees of the Pension Trust and Profit Sharing Plan, Dr. Pinto and Dr. Carroll, acknowledged that the Pension Trust and the Profit Sharing Plan were in receipt of the Irrevocable Designation and Carpenter and Colleen Pinto were qualified to receive benefits under the Pension Trust and Profit Sharing Plan. Dr. Pinto participated in the Profit Sharing Plan until he received all of his benefits in November 2001. (Aff. John M. Peterson; Defs.' Ex. 3). At the time Dr. Pinto received all his benefits, the Profit Sharing Plan's administrator was Carroll Pinto and the trustees were Dr. Pinto and Dr. Carroll. *Id.* In January 2001, Carroll Pinto established the Carroll, Pinto, Inc. 401K Plan ("401K Plan"). *Id.* Dr. Pinto never participated in the 401K Plan. *See id.* In 2001 and 2002 all remaining assets were removed from the Profit Sharing Plan and the Profit Sharing Plan ceased to exist in September 2002. *Id.* Defendants state that they have no record of the Pension Trust and that they believe that the assets of the Pension Trust were merged into the Profit Sharing Plan. (Defs.' Mem. in Support of S.J., pg. 7). Plaintiff offers no evidence about the current existence of the Pension Trust.

On or about April 20, 2004, plaintiff filed suit against Carroll Pinto in the Circuit Court of the City of Suffolk, Virginia. Plaintiff alleged that Carroll Pinto failed to pay her benefits owed under the Profit Sharing Plan and Pension Trust. Carroll Pinto removed the action to federal court on the basis that the claims were governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The parties executed, and the court entered, a Stipulation of Dismissal pursuant to Federal Rule of Civil Procedure 41(a). The action was dismissed without prejudice.

On September 3, 2004, plaintiff filed suit in the United States District Court for the Eastern District of Virginia, Richmond Division, against Carroll Pinto, Dr. Pinto, Dr. Carroll, the Pension Trust, and the Profit Sharing Plan. The complaint makes claims pursuant to ERISA for benefits due under the Pension Trust and the Profit Sharing Plan, breach of fiduciary duty, and participation in breach of fiduciary duty. Dr. Pinto filed an answer with affirmative defenses on November 9, 2004. Additionally, on November 9, 2004, Dr. Pinto filed a motion to dismiss or in the alternative to transfer venue to the Norfolk Division of the Eastern District of Virginia. On November 9, 2004, defendants Carroll Pinto, the Profit Sharing Plan, and the Pension Trust jointly filed a motion to dismiss or in the alternative to transfer venue to the Norfolk Division of the Eastern District of Virginia. On November 9, 2004, Dr. Carroll filed a motion to dismiss or in the alternative to transfer venue to the Norfolk Division of the Eastern District of Virginia. Dr. Carroll filed an answer with

affirmative defenses on November 9, 2004. On December 17, 2004, the court denied defendants' motions to dismiss, but granted the motions to transfer venue to the Norfolk Division.

Defendants Carroll Pinto, the Profit Sharing Plan, and the Pension Trust jointly filed an answer with affirmative defenses on December 30, 2004. Additionally, on December 30, 2004, Carroll Pinto, the Profit Sharing Plan, and the Pension Trust jointly filed a cross-claim against defendants Dr. Pinto and Dr. Carroll. The cross-claim seeks, in the event that plaintiff is successful, full restitution of the losses to the Profit Sharing Plan and the Pension Trust, full recovery of any damages, and costs and attorneys' fees in defending the action. Dr. Carroll filed an answer to the cross-claim on January 3, 2005, and Dr. Pinto filed an answer on January 18, 2005.

Dr. Carroll, on January 3, 2005, filed a cross-claim against Dr. Pinto seeking, in the event plaintiff is successful, full recovery of any damages and costs and attorneys' fees in defending the action. Dr. Pinto did not file an answer.

On March 2, 2005, Dr. Pinto filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, accompanied by a Memorandum in Support of Defendant Carlos Pinto's Motion for Summary Judgment ("Memorandum in Support"). On March 7, 2005, Dr. Carroll filed a motion for summary judgment against plaintiff pursuant to Rule 56. Dr. Carroll incorporated Dr. Pinto's Memorandum in Support. On March 16, 2005, Carroll Pinto, the Profit Sharing Plan, and the Pension Trust jointly filed a motion for summary judgment pursuant to Rule 56, and incorporated Dr. Pinto's Memorandum in Support. On March 15, 2005, plaintiff requested an extension of time to file her response to defendants' motions for summary judgment. Plaintiff filed a response

on March 23, 2005. The court, on April 15, 2005, granted plaintiff's motion for an extension of time. On March 30, 2005, Dr. Pinto filed a reply. On March 31, 2005, Carroll Pinto, the Profit Sharing Plan, and the Pension Trust joined in Dr. Pinto's reply. On April 7, 2005, Dr. Carroll joined in Dr. Pinto's reply.

On April 22, 2005, plaintiff filed a cross-motion for summary judgment pursuant to Rule 56, as to defendants' liability. Dr. Carroll filed a motion to strike plaintiff's motion for summary judgment and response to the motion for summary judgment on May 2, 2005. Dr. Pinto filed a motion to strike on May 3, 2005. Carroll Pinto, the Profit Sharing Plan, and the Pension Trust filed a motion to strike on May 3, 2005. Plaintiff filed a response to the motion to strike on May 10, 2005.

On May 20, 2005, the court ordered all parties to file supplemental briefings regarding the motions for summary judgment. Plaintiff filed a supplemental brief on June 3, 2005; Dr. Carroll filed a supplemental brief on June 6, 2005; Dr. Pinto filed a supplemental brief on June 6, 2005; and Carroll Pinto, the Profit Sharing Plan, and the Pension Trust filed a joint supplemental brief on June 6, 2005. The motions for summary judgment are now ripe for review.

## II. STANDARD OF REVIEW

Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden on the moving party may be discharged by showing that there is an absence of evidence to support the

nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the nonmoving party must go beyond its own unverified pleadings to show genuine factual issues for trial. *See id.* at 324, 106 S.Ct. 2548.

Evidence submitted in support of or in opposition to a motion for summary judgment must be admissible under the standard articulated in Rule 56(e). Supporting and opposing affidavits must be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Fed.R.Civ.P. 56(e). *See Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir.1991) (evidence submitted in opposition to summary judgment motion must be admissible and based on personal knowledge). Summary judgment affidavits cannot be conclusory or based upon hearsay. *Evans v. Techs. Applications & Service Co.,* 80 F.3d 954, 962 (4th Cir.1996).

### III. ANALYSIS

#### A. Motion to Strike

 Defendants filed a motion to strike plaintiff's motion for summary judgment. In the motion, defendants request that plaintiff's motion for summary judgment be struck, and that the court award defendants attorneys' fees and costs associated with plaintiff's motion for summary judgment. Defendants argue that plaintiff's motion is not a unique motion, but merely an extra rebuttal brief to defendants' motion for summary judgment. In particular, defendants argue that plaintiff's motion violates local rule 7(F)(1), which only allows one reply to a motion for summary judgment. *See E.D.Va. R. 7(F)(1).*

Plaintiff's motion is clearly a unique motion for summary judgment allowed under the Federal Rules of Civil Procedure. Under Federal Rule of Civil Procedure 56, plaintiff is allowed, at any time after twenty days from the commencement of the suit, to file a motion for summary judgment. *See Fed.R.Civ.P. 56(a).* Plaintiff agrees with defendants that there are no material facts in dispute in this case. In response to defendants' motions for summary judgment, the court would only be able to grant the motion for summary judgment in favor of defendants or deny the motion, in which case the suit would go to trial absent a summary judgment motion from plaintiff. The court could not grant summary judgment in favor of plaintiff merely on defendants' motions for summary judgment. Instead, plaintiff was required to file her own motion for summary judgment, if she wanted to receive a grant of summary judgment in her favor and avoid trial. Accordingly, defendants' motions to strike plaintiff's motion for summary judgment are **DENIED**.

#### B. Standing

In order for the plaintiff to have a cause of action under ERISA, the plaintiff must meet certain statutory requirements. Meeting these statutory requirements is a matter of standing and jurisdiction. *See Stanton v. Gulf Oil Corp.* 792 F.2d 432, 434 (4th Cir.1986). Specifically, a person seeking to recover benefits due to her under an ERISA-qualified plan only has the power to bring a civil action if she is a plan participant or beneficiary. *See* 29 U.S.C. § 1132(a)(1). Similarly, only plan participants, beneficiaries, and fiduciaries have the power to bring a civil action for breach of fiduciary duties. *See* 29 U.S.C. § 1132(a)(2) and (3). Thus, plaintiff must show that she is a participant or beneficiary to bring suit for benefits due and that she is a plan participant, beneficiary, or fiduciary to bring suit for breach of fiduciary duties.

 Plaintiff claims that she has standing because she is a beneficiary of the

plan. The statutory definition of a beneficiary is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). While the plan is no longer in existence, a person who may become entitled to a benefit under it has standing. Thus, if plaintiff can show that she may be entitled to a benefit, the fact that the plan is no longer in existence does not preclude plaintiff from having standing to bring suit.

The jurisprudence of the United States Supreme Court and the Fourth Circuit Court of Appeals regarding participants is helpful in determining whether plaintiff "may become entitled" to benefits, thereby rendering her a beneficiary. Like a beneficiary, a participant is defined as an employee or former employee "who is or may become eligible to receive a benefit . . . ." 29 U.S.C. § 1002(7). Thus, cases analyzing whether a plaintiff is a "participant" involve reasoning similar to that in determining whether a plaintiff is a "beneficiary." In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 116–18, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), plaintiffs, former employees and participants in an ERISA-qualified plan, sued for information relating to the plan on the grounds that they might become eligible to receive a benefit from the plan. The Supreme Court held that merely because the former employees claimed in a lawsuit to be participants, such a claim did not automatically render them participants for purposes of ERISA. *See id.* at 958. Instead, plaintiffs in *Firestone* were required to show that they had a reasonable expectation of returning to

ERISA-covered employment or that they had a colorable claim to vested benefits. *See id.* Similarly, the Fourth Circuit has held that, "whether an employee has standing as a 'participant' depends, not on whether he is actually entitled to benefits, but on whether he has a colorable claim that he will prevail in a suit for benefits." *Davis v. Featherstone*, 97 F.3d 734, 736 (1996) (*quoting Abraham v. Exxon Corp.*, 85 F.3d 1126, 1129 (5th Cir.1996)).

■ In order to determine whether plaintiff is a beneficiary and has standing, the court must determine whether plaintiff has a colorable claim for benefits. The test for a colorable claim is not stringent. *See id.* at 737 (*citing Panaras v. Liquid Carbonic Industries Corp.*, 74 F.3d 786, 790 (7th Cir.1996)). A claim is colorable if it is "arguable and nonfrivolous, whether or not it would succeed on the merits." *Id.* at 737–38.

Plaintiff claims she is entitled to benefits because of the Irrevocable Designation making her the primary beneficiary[2] of "$100,000.00 of the investment fund and life insurance proceeds of the Carroll, Pinto, Inc. Employees' Pension Trust and Carroll, Pinto, Inc. Employees' Profit Sharing Plan." (Irrevocable Designation; Defs.' Ex. 2). Plaintiff asserts that at the time defendant retired and withdrew his pension as a lump sum payment that she was entitled to $100,000 of the lump sum. Defendants argue that even if plaintiff was Dr. Pinto's primary beneficiary for the Profit Sharing Plan, plaintiff would only be paid benefits if Dr. Pinto died before all his benefits from the Profit Sharing Plan had been paid to him.

---

**2.** Plaintiff and defendants disagree whether the designation of plaintiff as primary beneficiary was legal under ERISA law at the time of the designation. Additionally, defendants argue that even if the designation was valid at the time it was made, it was no longer valid after Dr. Pinto married Gloria Pinto, because

of ERISA provisions regarding spouses as beneficiaries. The court need not address whether the designation of plaintiff as primary beneficiary is valid, because even if plaintiff is the primary beneficiary, as she claims, she does not have a colorable claim for benefits.

ERISA dictates that the plan be administered "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). *See also Altobelli v. International Business Machines Corp.*, 77 F.3d 78, 80 (4th Cir.1996). In making a benefit award determination, plan administrators must first look to the language of the plan. *See Steamship Trade Ass'n Intern. v. Bowman*, 247 F.3d 181, 183 (4th Cir.2001) (*citing Lockhart v. United Mine Workers of America 1974 Pension Trust*, 5 F.3d 74, 77 (4th Cir.1993)). Plaintiff argues that being designated as a "beneficiary" meant that she was entitled to $100,000 at the time Dr. Pinto received his payment from the plan. However, the plan documents and instruments directly contradict plaintiff's interpretation of the term "beneficiary." Two documents are important in this case—the plan itself and the Irrevocable Designation. The Irrevocable Designation makes plaintiff a "primary beneficiary" of the plan. The plan defines beneficiary as "the person to whom a share of a *deceased* Participant's interest in the Plan is payable, subject to the restrictions of 6.2 and 6.6." (Prototype Defined Contribution Plan and Trust Art. 1.6; Defs.' Ex. 5, pg. 1) (emphasis added).[3] Thus, under the plan, one is only entitled to benefits as a beneficiary, if the plan participant dies before all of the participant's interest in the plan is paid. If all interest in the plan is paid to the participant before death, the beneficiary is entitled to nothing. Plaintiff points to no plan provision that would render an interpretation of "beneficiary" in accord with her interpretation. Accordingly, under the Profit Sharing Plan documents and instruments, plaintiff would only be entitled to benefits of up to $100,000 as a beneficiary, if Dr. Pinto died before all benefits from the Profit Sharing Plan were distributed to him.

Under the plan documents, upon reaching the normal retirement date, a plan participant can terminate his employment, at which time all amounts credited to the participant in the Profit Sharing Plan are distributable. (Prototype Defined Contribution Plan and Trust Art. 6.1; Defs.' Ex. 5, pg. 53). For purposes of the Profit Sharing Plan, the normal retirement date is normal retirement age. Normal retirement age is "the later of the date a Participant attains his 65th birthday ... or the 5th ... anniversary of the first day of the Plan Year in which participation in the Plan commenced." In adopting the plan prototype, the employer for the Profit Sharing Plan, Carroll Pinto, elected that all distributions under the plan must be made in either a lump sum or installments. (Adoption Agreement; Defs.' Ex. 6, pg. 17). Annuity payments are not allowed under the Profit Sharing Plan. (Adoption Agreement; Defs.' Ex. 6, pg. 17). If a plan participant dies before the amounts credited to him under the Profit Sharing Plan are distributed, any remaining amounts are paid to either a surviving spouse or designated beneficiary. (Prototype Defined Contribution Plan and Trust Art. 6.13; Defs.' Ex. 5, pg. 73).

Dr. Pinto had reached normal retirement age and normal retirement date when he retired on June 1, 2001.[4] At that

---

**3.** Articles 6.2 and 6.6 of the Profit Sharing Plan describe how benefits are to be determined and distributed upon death of the participant. (Prototype Defined Contribution Plan and Trust Art. 6.2 and 6.6; Defs.' Ex. 5, pg. 53–55, 65–70).

**4.** Dr. Pinto began taking part in the Profit Sharing Plan on February 8, 1971. Thus, Dr. Pinto reached normal retirement age at the later of 65 years of age or February 8, 1976. Dr. Pinto asserted in his "Memorandum in Support of Defendant Carlos Pinto M.D.'s Motion to Dismiss or Transfer Venue" filed November 9, 2004, that he was 77 years old; accordingly, Dr. Pinto did not reach 65 years of age until approximately 1992. As that date

time, according to the Profit Sharing Plan, he was entitled to a full distribution of his investment in the Profit Sharing Plan either in the form of a lump sum distribution or installments. (Prototype Defined Contribution Plan and Trust Art. 6.1; Defs.' Ex. 5, pg. 53, *in conjunction with* Adoption Agreement; Defs.' Ex. 6, pg. 17). Dr. Pinto chose a lump sum distribution and received a full distribution of benefits in November 2001. Plaintiff is no longer a beneficiary of the plan and will not become one in the future, because the Profit Sharing Plan's definition of beneficiary is, "the person to whom a share of a deceased Participant's interest in the Plan is payable . . . ." (Prototype Defined Contribution Plan and Trust Art. 1.6; Defs.' Ex. 5, pg. 1). Dr. Pinto is alive and has received a full distribution of benefits under the plan documents. There is no arguable scenario whereby plaintiff would receive benefits under the Profit Sharing Plan, and she therefore lacks standing to pursue her ERISA claim.

Finally, defendants' decision to deny plaintiff benefits would be reviewed only for abuse of discretion. *See Firestone*, 109 S.Ct. at 954; *Booth v. Wal–Mart Stores, Inc.*, 201 F.3d 335, 341 (4th Cir. 2000). The Profit Sharing Plan states that the plan administrator has the "power and discretion to construe the terms of the Plan and determine all questions arising in connection with the administration, interpretation, and application of the Plan." (Prototype Defined Contribution Plan and Trust; Defs.' Ex. 5, pg. 24). Where an ERISA plan grants the fiduciary power to construe disputed terms and exercise discretionary powers, the fiduciary's interpretation will not be invalidated unless the interpretation is unreasonable. *See Firestone*, 109 S.Ct. at 954. The Fourth Circuit has adopted an abuse of discretion standard for judicial review of a "fiduciary's discretionary decision under ERISA." *Booth*, 201 F.3d at 341. As part of the judicial review, however, if a fiduciary is operating under a conflict of interest, the court must weigh the conflict of interest in determining whether the fiduciary abused his discretion. *See Booth*, 201 F.3d at 342.

Plaintiff's ex-husband, Dr. Pinto, was a fiduciary of the plan when his benefits were fully paid.[5] If plaintiff's interest had been recognized, Dr. Pinto would have received $100,000 less in pension benefits. Thus, Dr. Pinto was arguably acting under a conflict of interest. The decision not to recognize plaintiff's Irrevocable Designation would be reviewed under an abuse of discretion standard and the conflict of interest would be weighed in determining whether there was an abuse of discretion. However, even taking the conflict of interest into account, under the plan documents and the definition of beneficiary, the fiduciaries had no choice but to pay Dr. Pinto his full amount of benefits. The plan clearly dictated that Dr. Pinto was entitled to receive his benefits and that a beneficiary would only receive benefits if the plan participant died before the participant's interest in the plan was distributed.

ERISA's standing requirements dictate that plaintiff must have a colorable claim as a beneficiary to have a cause of action under ERISA. *See* 29 U.S.C. § 1132(a)(1)-(3). Under the Profit Sharing Plan's documents and instruments plaintiff does not have an arguable claim that she is entitled to benefits. Therefore, there can

---

is later than 1976, plaintiff's normal retirement date was when he reached 65 years of age in approximately 1992.

**5.** The Profit Sharing Plan began winding down in 2001 and was terminated in September 2002. Thereafter, a 401(k) plan was implemented, in which Dr. Pinto did not participate. (Aff. John M. Peterson; Defs.' Ex. 3).

be no abuse of discretion in paying the pension benefits in full to Dr. Pinto absent an arguable legal claim to $100,000 of them from plaintiff.

## IV. CONCLUSION

For the reasons set forth above, defendants' motions for summary judgment are **GRANTED**, and, accordingly, plaintiff's cross-motion for summary judgment is **DENIED**. Cross claims filed by defendants Carroll Pinto, the Profit Sharing Plan, the Pension Trust, and Dr. Carroll are **DISMISSED** as **MOOT**.[6] The court declines to award attorneys' fees in this case, and all parties are to bear their own attorneys' fees. The Clerk is **DIRECTED** to send a copy of this Opinion and Final Order to counsel for all parties.

**IT IS SO ORDERED.**

---

**6.** Cross claimants sought full restitution of losses, contribution, and indemnity in the event plaintiff was successful in her lawsuit.

As plaintiff was unsuccessful, and no liability or damages were assessed against cross claimants, their cross claims are moot.